NO. 07-08-0330-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 15, 2010

______________________________

DOMINGO ROSALES, 

Appellant

v.

THE STATE OF TEXAS, 

Appellee

_________________________________

FROM THE 121
ST
 DISTRICT COURT OF YOAKUM COUNTY;

NO.  2546; HON. JAY GIBSON, PRESIDING

_______________________________

Opinion

_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Domingo Rosales appeals his conviction for aggravated sexual assault.  Via five issues, he contends that the trial court erred in admitting hearsay testimony and denying his challenges for cause directed toward two venire members  We affirm.

Background

Appellant was convicted of penetrating the anus of his stepdaughter with his sexual organ.  The girl was under fourteen years of age at the time.  The victim told her mother (Mandy) of the occurrence.  So too did she inform her mother of how he had sexually assaulted her in the past and while they lived in Kansas.  Mandy did nothing in response to the disclosure, opting to believe that she did not marry someone who would sexually assault children.  Thereafter, the girl told her stepmother, Stormy, of the assaults.  Stormy then informed her husband (
i.e.
 the child’s biological father), who called the police.

Issues One, Two and Three - Hearsay Statement

In his first three issues, appellant contends that the trial court erred by allowing Stormy to disclose to the jury what the child victim had told her of the assaults.  The testimony was hearsay and inadmissible as either outcry or an excited utterance, according to appellant.  The issues are overruled.  

Irrespective of whether the disclosure to Stormy constituted an excited utterance or whether Stormy was an outcry witness, we note that Mandy also informed the jury that her daughter disclosed to her how she had been repeatedly raped by appellant.  Furthermore, the sexual assault nurse also testified to what the child told her about being assaulted.  Because other evidence involving the sexual assaults endured by the child was admitted at trial, we find Stormy’s testimony to be cumulative.  Therefore, error, if any, was harmless.  
See Taylor v. State, 
774 S.W.2d 31, 35 (Tex. App.–Houston [14th Dist.] 1989, pet. ref’d). 

Issues 4 & 5 - Improper Denial of Challenges for Cause

In his last two issues, appellant “object[s] to the [trial] court’s 
sua sponte
 decision to rehabilitate the [venire] panel.”  That is, he asserts that it erred when it “refused to grant his challenges for cause once it became apparent that the vast majority of the venire was biased as a matter of law.”  We overrule the issues.  

The situation involved the inquiry into whether the prospective jurors could consider the full range of punishment for one found guilty of sexually assaulting a child.  That range included probation.  At one point, all but seven of the venire members initially disclosed that they could not consider assessing probation.  This purportedly evinced bias mandating the automatic exclusion of the venire members who responded negatively.

Admittedly, there are situations wherein the bias or prejudice of a venire member mandates, as a matter of law, his exclusion from the venire panel.  
See Rios v. State
, No. 07-04-0276-CR, 2005 Tex. App. 
Lexis
 8631 (Tex. App–Amarillo, October 19, 2005, no pet.) (describing such situations).  Yet, it is within the trial court’s discretion to first determine whether such a bias or prejudice exists.  
Anderson v. State
, 633 S.W.2d 851, 854 (Tex. Crim. App. 1982).  And, we believe that is what the trial court did here.

The record before us discloses that appellant’s counsel posed a question to the jury regarding probation which the State perceived as asking the jury for a commitment.  The State objected to the question, and the trial court sustained the objection.  Thereafter, the trial court engaged in a discourse about the legislature establishing a range of punishment and why it would do so.  The jurors were told that there were “all kinds of different cases that you can run into” and that what the legislature does is “leave the option to you based on the facts of the case to pick out what the appropriate punishment is if you find somebody guilty.”  It then said that a juror has “to be able to in [his] own mind conceive of a case or set of facts for someone charged with aggravated sexual assault of a child that [he] would consider, not necessarily give, but consider the low range of punishment, which in this case would be 5 years probation.”  According to appellant, a “very detailed example” of an assault involving a “precocious young girl” and a young boy then was presented to the venire by the trial court.  Under such a scenario, the trial judge opined that probation may be a consideration.  Then it told the venire another hypothetical involving egregious facts which it suggested could merit consideration of a greater punishment.  It was not finished, however, for the court then said that “to be qualified as a juror, you have to conceive in your mind, and it has nothing to do with this case or what happened in this case or didn’t happen in this case, has absolutely nothing to do with it, it’s whether you can think like a legislator, which is you can conceive of a set of facts where you may consider the low end, and you can conceive of a set of facts where you can consider the high end.”  Appellant’s counsel then followed the discourse by referring to what was said and asking if there was “anyone that can consider probation.”  Upon the State’s objection, the court rephrased the question to “‘[c]an you conceive of a case where you could consider probation,’” and appellant’s counsel asked it.  To that question, all but seven of the venire members answered “no.”
(footnote: 1)  After discussing with the litigants the topic of commitment questions, the trial court expressed concern about whether the venire misunderstood the example that it had given them.  Thus, it opted to question each panel member individually.  It was this further questioning that resulted in all but a few jurors changing their prior answer.  And, those who did not change their response were removed from the panel for cause.   

Needless to say, the explanation afforded by the trial court before the jury answered “no” was rather long and taxing.  It interjected hypothetical situations, references to the legislature, and admonitions about circumstances that had nothing to do with the prosecution at issue.  Indeed, its tenor even led the trial court to wonder whether the jurors understood it.  And, because of these indicia, reasonable minds could debate not only whether the jurors understood what was being said before they answered “no” but also whether their answer truly evinced a bias encompassing the range of punishment.  Thus, the trial court was entitled to invoke its discretion to inquire further into the potential existence of bias and prejudice 
viz
 the responsibility to consider the full range of punishment.  And, that it was allowed to do under 
Anderson
.  
See Mata v. State
, No. 13-02-0218-CR, 2008 Tex. App. 
Lexis
 3907 (Tex. App.–Corpus Christi May 22, 2008, pet. dism’d) (noting the rather “vague and rambling” nature of the hypothetical in assessing whether the response given by a venire member evinced incurable bias).

Having overruled each issue, we affirm the judgment of the trial court.

Brian Quinn

          Chief Justice

Publish.

 

 

  

 

 

FOOTNOTES
1:
It is this particular “no” answer that underlies appellant’s theory of bias warranting exclusion as a matter of law.